**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ROGER DAIGLE,**

                              **Plaintiff,**

          **v.**                              **5:00-CV-189**
                                             **5:00-CV-1055**
**TOGO WEST, Secretary of the United**         **5:01-CV-394**
**States Department of Veteran Affairs,**         **(FJS/DEP)**

                              **Defendant.**
_____

**APPEARANCES**                              **OF COUNSEL**

**ROGER DAIGLE**
821 East Brighton Avenue
Apt. 1216
Syracuse, New York 13205
Plaintiff _pro se_

**OFFICE OF THE UNITED**                  **PAULA RYAN CONAN, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I.  INTRODUCTION

          In his amended complaints, Plaintiff alleges, among other things, that the Merit Systems

Protection Board ("MSPB") erred in determining that Defendant's decisions to terminate him in

1996 and 1999 did not constitute discrimination or retaliation.[1]

_____

          [1] In addition to the MSPB proceedings, Plaintiff filed three separate civil actions, 5:00-
CV-189, 00-CV-1055, 01-CV-394, alleging that Defendant retaliated against him for engaging in
                                                                              (continued...)

## II.  BACKGROUND

Plaintiff began working as a medical clerk for the VA Hospital ("Defendant") in Syracuse, New York,  in its surgical intensive care unit ("SICU") in May 1991.  At the time, Plaintiff was fifty years old and held a Master's Degree in Business Administration.  In the summer of 1991, Plaintiff began working with Eva Homeyer, a registered nurse in the SICU.  Plaintiff alleges that, from that time until about October 1992, Ms. Homeyer sexually harassed him.  As a result, on December 1, 1992, Plaintiff filed a written complaint of employment discrimination, attributable to his sex, with Defendant.

Equal Employment Opportunity Investigator Jesse Raymond began investigating Plaintiff's claim of harassment in June 1993; and on August 9, 1993, he issued his report regarding that claim.  *See* Investigative Summary and Analysis of Investigator Raymond, dated August 9, 1993, Dkt. No. 88 at Exhibit "B-1a."  In that report, Investigator Raymond found that, although Plaintiff established a *prima facie* case of sexual harassment/discrimination, Defendant had adequately rebutted that claim.  *See id.*  Investigator Raymond concluded that

> [i]t appears that Eva Homeyer did harass the complainant because of him being different and that he was unable to perform and fit-in as she would have preferred.  But, it was ***not due to him being male***.  However, the allegations failed to be proven with a preponderance of evidence worthy of a positive recommendation.  Therefore, I recommend a finding of no discrimination.

---

[1](...continued)
protected activity in violation of Title VII of the Civil Rights Act of 1964.  Specifically, Plaintiff alleged that Defendant retaliated against him for whistleblowing and that Defendant subjected him to employment discrimination on the basis of  his sex.  On July 9, 2004, the Court granted Defendant's motion to consolidate these three actions.  *See* Dkt. No. 162 at 6.  The Court held a jury trial to resolve Plaintiff's Title VII claims from March 14, 2005, to March 23, 2005.  After considering the evidence, the jury returned a verdict, finding that Plaintiff had failed to prove these claims.  *See* Dkt. No. 196.

*See id.* at Part IV (emphasis added).

More than three years later, on December 13, 1996, Defendant terminated Plaintiff's employment on the basis that he made threats to other employees and was disrespectful.  *See* Plaintiff's Exhibit "P-6," Prong 3, Tab A at 2.  Plaintiff appealed that termination.  *See id.*  Administrative Judge Rudsill heard the case and found that Defendant did not prove its charges and that Plaintiff did not prove his affirmative defenses; accordingly, on December 11, 1998, he reversed Plaintiff's termination.  *See id.*  Defendant filed a petition for review to the MSPB, which later affirmed Judge Rudsill's findings.  *See Daigle v. Dep't of Veterans Affairs,* 84 M.S.P.R. 625, 628-29 (1999).  As a result, Defendant reinstated Plaintiff in February 1999, and assigned him to ward 6 South under supervising nurse Anita Kennedy.  *See* Plaintiff's Exhibit "P-6," Prong 3, Tab A at 2.

On November 22, 1999, Dr. Jackson Allison recommended Plaintiff's second termination based upon Plaintiff having written and transmitted four email messages - two on July 26, 1999, and two on July 28, 1999.  *See id.*  Specifically, Defendant charged Plaintiff with violating its email policy, wasting time by creating and transmitting inappropriate email messages, disrupting the workplace, engaging in menacing behavior, and referring to nurses Barbara Trotter, Lucy Johnson, and Susan Patchin as "patient abusers."  *See id.*  After reviewing the charges, Dr. Richard Kazel, the Acting Director of the Medical Center, sustained the charges and terminated Plaintiff's employment.  *See id.*  Plaintiff appealed Dr. Kazel's decision to the MSPB.  After reviewing the record and holding a hearing, the MSPB sustained all counts against Plaintiff except the counts alleging that Plaintiff had engaged in menacing behavior and had referred to

-3-

nurses Barbara Trotter, Lucy Johnson, and Susan Patchin as "patient abusers." *See id.* at 15-18.

Currently before the Court are the MSPB's determinations regarding Plaintiff's non-Title VII claims, i.e., his non-discrimination and Whistleblower Protection Act claims and Plaintiff's motion, pursuant to Rule 59 of the Federal Rules of Civil Procedure, for a new trial on his Title VII claims.

# III.  DISCUSSION

## A.    Plaintiff's Non-Title VII Claims

### *1.  Standard of Review*

The Court's consideration of Plaintiff's Whistleblower Protection Act and other non-discrimination claims is limited to its review of the administrative record of the MSPB's determination of those claims.[2]  *See* 5 U.S.C. § 7703(b)-(c); *Kelliher v. Veneman,* 313 F.3d 1270, 1274 (11th Cir. 2000) (citation omitted); *Murray v. United States Dep't of Justice,* 821 F. Supp. 94, 101 (E.D.N.Y. 1993) (citations omitted).  Pursuant to this standard of review, a court must affirm the MSPB's decisions regarding such claims unless the plaintiff can establish that those decisions were "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been

---

[2] Generally, the Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals of MSPB determinations.  *See* 5 U.S.C. § 7703(b)(1).  However, "where certain discrimination claims are presented before the MSPB . . . , the plaintiff may seek review in district court."  *Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002) (citing 5 U.S.C. § 7703(b)(2)) (footnote omitted).  "In these 'mixed' cases where discrimination claims as well as claims not based on discrimination were both presented before the Board, the appeals are not bifurcated; instead, the district court has jurisdiction to review both the discrimination and non-discrimination claims."  *Id.*  (citation omitted).

followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c); *see also Kelliher,*

313 F.3d at 1274 (quoting 5 U.S.C. § 7703(c)) (footnote omitted); *Chase-Baker v. Dep't of*

*Justice,* 198 F.3d 843, 845 (Fed. Cir. 1999) (quoting 5 U.S.C. § 7703(c)).


### 2.  Plaintiff's 1996 termination and denial of a wage-grade increase

#### a.  The MSPB's decision regarding Defendant's denial of a wage-grade increase to Plaintiff

Plaintiff first challenges the MSPB's ruling upholding Defendant's decision to withhold a

wage-grade increase from him in October 1996.

In its decision, the MSPB reversed its initial decision regarding the wage-grade increase

("WGI"), in which it had reversed Defendant's decision to withhold this increase from Plaintiff.

In support of its initial findings, the MSPB stated that it had to reverse Defendant's decision

because Defendant had presented no evidence that the Office of Personnel Management

("OPM") had approved its performance appraisal system.  *See* Defendant's Exhibit "6" at 4.

Nonetheless, the MSPB acknowledged that Defendant had presented sufficient evidence to show

that Plaintiff had received a "less-than-fully-successful" rating for the public-relations portion of

his job evaluation and that, even after Defendant had given him a reasonable period of time to

improve, Plaintiff had failed to perform at a fully successful level.  Due to these failures, Plaintiff

was issued a negative evaluation.  *See* Defendant's Exhibit "6" at 18-19.

When the MSPB reviewed its initial decision, it recognized that it had found "that

[Defendant's] evidence in support of its withholding of the WGI was particularly strong" but that

it had initially reversed Defendant's decision because it "did not present evidence to establish

that its performance appraisal system had been approved by OPM."  *See* Defendant's Exhibit "9" at ¶ 9.  However, during the MSPB's review of its initial decision, Defendant submitted evidence that OPM had approved its performance appraisal system in 1986.

The MSPB properly allowed Defendant to submit this additional evidence of the OPM's approval of its performance appraisal system because Plaintiff had not contested the withholding of his WGI on this basis, and the administrative law judge had not identified this issue in the memorandum in which he summarized the pre-hearing conference. *See id.* ¶ 10.  After considering this new evidence, the MSPB reversed its decision, thereby affirming Defendant's denial of a WGI to Plaintiff.  *See id.* at ¶ 16.

To support his assertion that the MSPB's affirmation of Defendant's denial of his WGI was arbitrary or capricious, Plaintiff argues that the MSPB did not give full weight to his evidence.  In this regard, Plaintiff contends that the MSPB ignored his responses to his level-of-competence evaluation.  In addition, Plaintiff claims that he did not have access to "the more detailed" version of the WGI allegations against him until after the deadline for his response had passed.

Although the MSPB did not specifically mention Plaintiff's submissions in its decision, the Court concludes that these documents are insufficient to demonstrate that the MSPB's decision was either arbitrary or capricious.  Specifically, the Court notes that Plaintiff's responses to his level-of-competence evaluation consist of nothing more than his interpretation of the events that occurred, and the MSPB was free to evaluate the credibility of those statements.  *See* Plaintiff's Exhibit "P-20," Tab B, B3-B8.  Moreover, Plaintiff's assertion that he did not receive a more detailed version of the WGI allegations is unfounded.  The difference between the alleged

-6-

"more detailed" version of the WGI allegations that he received on December 31, 1996, and the one that he received on October 25, 1996, is both minute and inconsequential.  The only difference between these documents to which Plaintiff points is the fact that the December version provides that two Reports of Contact were written describing an incident where Plaintiff allegedly yelled and was rude to a medical student, whereas the October version did not specify the number of complaints made.  *See* Plaintiff's Exhibit "P-20," Tab B, C5-C7.

Therefore, having reviewed the administrative record applicable to this claim, the Court is convinced that the MSPB considered all relevant evidence and correctly applied the applicable law and regulations and that its ultimate decision affirming Defendant's denial of Plaintiff's WGI was not arbitrary or capricious.  Accordingly, the Court affirms the MSPB's decision regarding this issue.

### b.  The MSPB's ruling regarding Plaintiff's Whistleblower Protection Act claim

Plaintiff next asserts that the MSPB's finding that he failed to establish that Defendant retaliated against him for filing sexual harassment, hostile work environment, and patient abuse claims was in error.

In its initial decision, the MSPB found that, although it was clear that Defendant's supervisors and management employees were aware of Plaintiff's claims, Defendant's termination of him was based on his unsatisfactory performance evaluations.  *See* Defendant's Exhibit "6" at 18-19.

Plaintiff claims that this decision was arbitrary and capricious because the MSPB failed to

-7-

consider the evidence that he submitted regarding other employees whom the VA did not

terminate even though they had made statements similar to the ones he made.  Specifically,

Plaintiff points to Mark Antinelli's and Laura Passmore's admissions that, although other

employees used vulgar language, they were not terminated.  *See* Plaintiff's Exhibits "P-16" at De

and P.  However, this argument has no merit because the MSPB explicitly held that Defendant

had failed to substantiate its claim that it fired Plaintiff for making threats and his use of bad

language.  *See* Defendant's Exhibit "6" at 4-7.  Nonetheless, the MSPB concluded that Defendant

terminated Plaintiff based upon his job performance.  *See id.* at 18-19.  Therefore, because the

MSPB did not base its decision to uphold Defendant's decision to terminate Plaintiff upon

Defendant's claims that Plaintiff used vulgar and threatening statements, the Court finds that

Plaintiff's evidence regarding Defendant's treatment of other employees is irrelevant.  Moreover,

the Court's review of the administrative record reveals that the MSPB considered all relevant

evidence and applied the relevant laws and regulations to the evidence.  Accordingly, the Court

affirms the MSPB's determination denying Plaintiff's WPA retaliation claim.

### 3. *Plaintiff's 1999 termination*

#### a. *Plaintiff's First Amendment claim*

"The First Amendment protects a government employee from discharge for speech upon

matters of public concern . . . , unless, under all the circumstances, the employee's interest in free

comment is outweighed by the State's interest in the efficiency of its public services."  *Rookard*

*v. Health & Hosps. Corp.,* 710 F.2d 41, 46 (2d Cir. 1983) (internal citation and other citation

omitted).  "In striking the balance between these interests, a court should consider whether the

speech impaired the employee's ability to perform his duties, disrupted working relationships requiring personal loyalty and confidence, or otherwise impeded the regular operation of the employing agency." *Id.* (citation omitted).[3]

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147-48 (1983) (footnote omitted).  Speech which involves only internal agency grievances rather than matters of concern to the community does not involve a matter of public concern.  *See Mings v. Dep't of Justice*, 813 F.2d 384, 388 (Fed. Cir. 1987) (citation omitted).  "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."  *Connick,* 461 U.S. at 149.

Plaintiff asserts that Defendant violated his First Amendment rights when it terminated his employment on the basis of his writing and sending four email messages to numerous employees and administrators.  The MSPB reviewed Defendant's decision to terminate Plaintiff and upheld that decision holding that Plaintiff's email messages were not of public concern and, therefore, were not protected speech under the First Amendment.  *See* Defendant's Exhibit "15" at 13-14.  The MSPB further held that, even if Plaintiff's emails were of public concern, Defendant's interest in the efficiency of its public services outweighed Plaintiff's interests.  *See id.*

After reviewing the emails in question and the MSPB's decision, the Court concludes that this decision was neither arbitrary nor capricious.  First, the contents of Plaintiff's messages

---

[3] This standard applies to federal employees as well as state employees.  *See Tao v. Freeh,* 27 F.3d 635, 638-39 (D.C. Cir. 1994) (citations omitted).

clearly address his internal grievances with Defendant.  For example, in his emails, Plaintiff

stated that he did not need an attitude adjustment, that Diane Cass needed an attitude adjustment,

that he had been written up, that he did not like working with Barbara Trotter, and that other

employees were there to provoke him.  *See* Defendant's Exhibit "15" at 7-12.  These internal

grievances are clearly personal in nature and are not of public concern.  *See Mings,* 813 F.2d at

388 (citation omitted).

Furthermore, even if the Court were to assume that Plaintiff's email messages addressed

issues of public concern, Defendant's interest in promoting the efficiency of its public services

clearly outweighs Plaintiff's free speech interests.  In response to Plaintiff's emails, three key

employees complained and stated that they did not want to work on the ward because of

Plaintiff's presence there.  Additionally, Defendant had to send one of these three employees to

the Employee Assistance Program because she was so upset by Plaintiff's email messages.  Thus,

the record clearly demonstrates that the adverse effect that Plaintiff's email messages had on

Defendant's operations outweighed any public interest that the messages addressed.

Accordingly, the Court affirms the MSPB's decision relating to this issue.


### b. Plaintiff's violation of Defendant's e-mail policy

On April 7, 1999, Philip Thomas, then-Director of the VA Medical Center, issued a

memorandum entitled "Appropriate Use of E-mail" to all employees, which set forth the

guidelines for the use of Defendant's internal email system.  *See* Defendants' Exhibit "15" at 4.

This memorandum explicitly stated that email messages that were non-work related, expressions

of anger, joke telling, and personal remarks were inappropriate and that employees were to use

the email system only in connection with their official duties and responsibilities.  *See id.*  In order to assist employees in determining the appropriateness of their email messages, the memorandum set forth, by way of example, the following hypothetical:  "If this message was printed and posted on the main floor bulletin board, would it be appropriate?"  *See id.*

Plaintiff argues that his email messages were in compliance with Defendant's email guidelines and that the MSPB's decision affirming Defendant's determination that he had violated this email policy was arbitrary and capricious.

The MSPB looked at each of Plaintiff's four email messages to determine if each complied with the policy.  As a result of its review, the MSPB found that Plaintiff's July 26, 1999 message, transmitted at 11:40 a.m., violated the email policy because it contained personal information and expressions of anger.  *See id.* at 14.  Likewise, the MSPB found that Plaintiff's July 26, 1999 message, transmitted at 4:01 p.m., violated the email policy because it contained expressions of anger and addressed matters that did not involve all the recipients.  *See id.* at 15. The MSPB also found that Plaintiff's July 28, 1999 message, transmitted at 9:51 a.m., violated the email policy because it contained information that had no use to the recipients in their official duties and responsibilities.  *See id.* at 15.  Finally, the MSPB found that Plaintiff's July 28, 1999 message, transmitted at 11:00 a.m., violated the email policy because it contained expressions of anger.  *See id.* at 15.

Plaintiff claims that his email messages did not violate the email policy because he followed the criteria set forth in Mr. Thomas' memorandum.  Specifically, Plaintiff argues that, because he determined that his email messages would have been appropriate if posted on the main floor bulletin board, he transmitted them in accordance with the policy.  *See* Plaintiff's

Objections to the MSPB's Determinations ("Objections"), dated April 7, 2005, at 4.  This reasoning is flawed.  The hypothetical in the memorandum was clearly not intended to be a summary of the entire policy; rather, it was intended to assist employees in determining the appropriateness of their messages.  The email policy itself, which was also set forth in the memorandum, very clearly defines the subjects and the content of the messages that employees could appropriately send through Defendant's email system, i.e., only those messages that were related to an employee's official duties and responsibilities.  The fact that Plaintiff thought that his messages were appropriate for the main floor bulletin board only demonstrates that he used bad judgment, not that he followed the email policy.

Plaintiff also argues that the MSPB failed to consider the effects that his recent medical procedure had on his ability to conform his actions to Defendant's email policy.  The record, however, shows that the MSPB did, in fact, consider Plaintiff's medical condition.  In this regard, the MSPB noted that Plaintiff had undergone a biopsy on July 26, 1999, and that he had been prescribed Levofloxacin.  *See* Defendant's Exhibit "15" at 6.  The MSPB also noted that Levofloxacin "may cause drowsiness, trouble in thinking, trouble in controlling movements, or trouble in seeing clearly."  *See id.*  Although the MSPB did not specifically mention the effect that Levofloxacin might have had on Plaintiff's judgment, this does not alter the fact that Plaintiff's email messages violated the email policy.  In addition, the fact that Plaintiff sent four separate email messages at different times over the span of two days demonstrates that Plaintiff knew the precise content of the email messages and knew what he was doing when he sent them to Defendant's other employees.  Therefore, the Court finds that the MSPB's finding that Plaintiff's email messages violated Defendant's email policy was not arbitrary and capricious.

-12-

Accordingly, the Court affirms the MSPB's decision as it relates to this issue.

### c. The MSPB's determination that Plaintiff's emails wasted work-time and disrupted the workplace

Plaintiff also argues that the MSPB's ruling that his email messages wasted work-time and disrupted the workplace was arbitrary and capricious.

The MSPB found that both of Plaintiff's July 26, 1999 email messages and his July 28, 1999 message transmitted at 9:51 a.m. constituted a waste of time while he was on duty. *See id.* at 16. It is clear, as discussed above, that these messages were not job-related; therefore, the only issue is whether Plaintiff wrote these email messages while he was on duty.

Plaintiff asserts in his objections that the time it took him to write the email messages was no longer than the time allowed for a coffee break. Moreover, Plaintiff asserts that he did not write each email in one sitting but rather worked on each email throughout the day while he performed his job duties. Although these arguments attempt to mitigate the time Plaintiff spent drafting his email messages, the fact remains that he wrote them during his scheduled shift. Therefore, regardless of the amount of time Plaintiff spent writing each email message, it is clear that he used his time on duty to engage in a non-work-related activity.

Plaintiff next argues that he did not write the messages as an employee but rather "as a patient and a veteran." *See* Plaintiff's Objections at 4, ¶ 6. This argument has little relevance, if any, to the MSPB's determination because, regardless of the capacity in which Plaintiff wrote his email messages, the fact remains that he wrote them during his shift at the VA. Accordingly, the Court concludes that the MSPB's determination was not arbitrary or capricious, and, therefore,

affirms the MSPB's determination that Plaintiff wasted time on duty when he drafted and sent the three emails at issue.

The MSPB also found that both of Plaintiff's July 28, 1999 email messages constituted a disruption of the workplace.  *See* Defendant's Exhibit "15" at 16-17.  Specifically, the MSPB concluded that Plaintiff's message, transmitted at 9:51 a.m., resulted in Mary Ann Deziley, Susan Patchin, Barbara Trotter, and several other employees filing complaints with Carol Williams, the Clinical Operations Manager.  *See id.*  The MSPB also found that the complaints took Ms. Williams away from her other job duties and that Defendant sent Ms. Patchin to the Employee Assistance Program because Plaintiff's email message upset her.  *See id.*  Finally, the MSPB found that Plaintiff's message, transmitted at 11 a.m., upset several employees.  *See id.* at 17.

In his objections to the MSPB's decision, Plaintiff reiterates the same argument that he originally presented to the MSPB; that is, that the individuals who complained about Plaintiff's email messages were individuals against whom Plaintiff had filed complaints and, therefore, their actions were not credible.  As the MSPB held in its decision, although Ms. Deziley, Ms. Patchin, and Ms. Trotter may have been angry with Plaintiff for filing what they believed to be groundless allegations, the fact remains that Plaintiff's email messages disrupted the workplace.  Accordingly, the Court affirms the MSPB's decision with regard to this issue.

### d. The MSPB's decision regarding Plaintiff's claim of retaliation under the Whistleblower Protection Act

Plaintiff claims that Defendant terminated him in retaliation for his having disclosed in his email messages numerous act of wrongdoing and for having sent an August 28, 1999 letter to

-14-

President Clinton claiming that Defendant prevented a patient from testifying about patient abuse.

To establish that a defendant retaliated against him for engaging in whistleblowing activities, a plaintiff must show, by a preponderance of the evidence, that (1) his disclosures were protected under the WPA and that (2) his disclosures were a contributing factor to his termination. *See Cosgrove v. Fed. Home Loan Bank of N.Y.,* No. 90 CIV. 6455, 92 CIV. 4225, 1999 WL 163218, *8 (S.D.N.Y. Mar. 23, 1999) (citations omitted). Moreover, to be protected under the WPA, a disclosure must be specific and detailed. *See Schaeffer v. Dep't of Navy,* 86 M.S.P.R. 606, 616 (2000) (quotation and other citations omitted).

"A [plaintiff] may demonstrate that a disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action." *Shaw v. Dep't of Air Force,* 80 M.S.P.R. 98, 113-14 (1998) (citation omitted); *see also Cosgrove*, 1999 WL 163218, at *8 (citation omitted) .

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the plaintiff's disclosure. *See Cosgrove,* 1999 WL 163218, at *8 (citation omitted). To determine whether the defendant would have taken the same action, the court considers "(1) [t]he strength of the agency's evidence in support of its personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar action against employees who are

not whistleblowers, but who are otherwise similarly situated." *Shaw,* 80 M.S.P.R. at 115 (citations omitted).

In its decision, the MSPB held that Plaintiff's claim of retaliation for whistleblowing activities had no merit. Specifically, the MSPB concluded that the only protected statement contained in Plaintiff's email messages was the statement concerning his July 1995 psychiatric exam. *See* Defendant's Exhibit "15" at 20. However, the MSPB further found that Defendant had more than sufficient reason to terminate Plaintiff based on his breach of the email protocol and the effect that his email messages had on other employees and Defendant's operations. *See id.* Additionally, the MSPB found that Plaintiff's email messages did not personally embarrass either the proposing or the deciding official, nor did either of these officials have any involvement in the decision to have Plaintiff undergo a psychiatric examination. *See id.*

With regard to Plaintiff's letter to President Clinton, the MSPB found that the subject matter of the letter was protected and that the deciding official, Dr. Richard Kazel, knew of the letter prior to the decision to terminate Plaintiff. *See id.* at 21. However, the MSPB found no evidence to suggest that Defendant's management knew of the letter prior to November 22, 1999, when Dr. Jackson Allison issued the notice of proposed termination. *See id.* Moreover, the MSPB concluded that, even if the letter had been a contributing factor in Defendant's decision to terminate Plaintiff, Defendant had "more than sufficient reason to discipline [Plaintiff] based on his 'unprotected' statements in the e-mail." *See id.* Furthermore, the MSPB found that Plaintiff's disclosure did not embarrass either Dr. Allison or Dr. Kazel, nor did either of these officials have any involvement in the matters that Plaintiff discussed in this letter. *See id.*

A review of the evidence clearly supports the MSPB's decision, and Plaintiff has

-16-

presented no argument or evidence that suggests that the MSPB's decision was arbitrary or capricious.  Accordingly, the Court affirms the MSPB's decision regarding this issue.

In sum, Plaintiff has failed to present sufficient evidence showing that the MSPB's determinations regarding his 1996 termination and wage-grade increase, his WPA claims, and the events surrounding his 1999 termination were arbitrary or capricious.  Accordingly, the Court affirms the MSPB's decisions in their entirety.


**B.      Plaintiff's Rule 59 Motion**

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, "[a] motion for a new trial should be granted when, in the opinion of the district court, 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'"  *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1047 (2d Cir. 1992) (quotation and other citations omitted).  In other words, "[a] new trial may be granted . . . when the jury's verdict is against the weight of the evidence."  *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 133 (2d Cir. 1998) (citations omitted).

Under Rule 59, the court "is free to weigh the evidence [itself], and need not view it in the light most favorable to the verdict winner."  *Id.* at 134 (citation omitted).  Thus, in the appropriate case, a court may grant a motion for a new trial even where "there is substantial evidence supporting the jury's verdict."  *Id.*  However, a "court should only grant such a motion when the jury's verdict is 'egregious.'"  *Id.* (citation omitted).

In support of his motion for a new trial, Plaintiff claims that the Court did not follow the Federal Rules of Evidence, that a consolidated trial made it impossible for the jury to follow and understand his legal claims, and that the Court needlessly kept issues and evidence from the jury.

-17-

With regard to Plaintiff's argument that the Court did not follow the Federal Rules of Evidence, Plaintiff has failed to identify any specific Rule of Evidence that he believes the Court violated. Rather, Plaintiff's disagreement with the Court's rulings regarding the admissibility of evidence appears to be based upon his personal beliefs of fairness. Although, during the trial, the Court repeatedly attempted to explain the rules of evidence to Plaintiff and to explain why certain testimony and documents were inadmissible, Plaintiff's lack of knowledge regarding these rules resulted in his conclusion that the Court treated him unfairly. As the Court tried to explain to Plaintiff at the time of its rulings, much of Plaintiff's evidence was inadmissible, either because it was irrelevant to his Title VII claims (e.g. Plaintiff's MSPB exhibits, testimony regarding patient abuse, etc.) or because he failed to lay the proper foundation for the proposed exhibits (e.g. patient medical records, Plaintiff's psychiatric examination, etc.). Accordingly, the Court did not err in its application of the Federal Rules of Evidence during trial.

In further support of his Rule 59 motion, Plaintiff argues that the Court erred in not allowing him to present his WPA claim to the jury. Plaintiff asserts that presentation of his WPA claim was necessary for him to show that Defendant's alleged patient abuse offended him not only as a man but as a human being. However, Title VII does not protect individuals from being offended as human beings, but rather being discriminated against because of their race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000-e, *et seq.* Thus, even if the Court had allowed Plaintiff to show that Defendant's alleged patient abuse offended him as a human being, such evidence would not have been relevant to his Title VII claim. Therefore, the Court was justified in precluding Plaintiff from introducing such evidence.

Additionally, Plaintiff argues that the Court impeded his presentation of facts and

evidence by not allowing him to refer to his notes to refresh his memory during his direct

testimony and during Defendant's cross-examination of him.  Plaintiff asserts that, by doing so,

the Court portrayed him as evasive, and that, under the circumstances, no reasonable person

could have competently testified without referring to written documentation.  Plaintiff's

argument is without merit.  In this regard, the Court notes that Plaintiff was aware of the trial

dates and knew well in advance which of his claims the Court would allow him to present to the

jury.  It was Plaintiff's responsibility to familiarize himself with his own exhibits and refresh his

memory as to the events that were subject to his lawsuit before trial.  Under these circumstances,

the Court did not err by not allowing Plaintiff to search for answers to *each* of Defendant's

questions in his voluminous catalog of exhibits.

Finally, Plaintiff argues that the jury improperly ignored his evidence and the lack of

credibility of Defendant's witnesses.  This argument is without merit.  It is the function of the

jury, as fact finder, to determine the credibility of witnesses.  *See Tennant v. Peoria & P.U. Ry.

Co.,* 321 U.S. 29, 35 (1944) (citations omitted).  In fact, a court may not grant a motion for a new

trial pursuant to Rule 59 on the basis of the weight of the evidence unless it finds that the jury's

verdict is "'seriously erroneous.'"  *Binder v. Long Island Lighting Co.,* 57 F.3d 193, 202 (2d Cir.

1995) (quotation and footnote omitted).  Thus, "[w]here the resolution of the issues depended on

assessment of the credibility of the witnesses, it is proper for the court to refrain from setting

aside the verdict and granting a new trial."  *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d

Cir. 1992) (citations omitted).  Moreover, "[c]ourts are not free to reweigh the evidence and set

aside the jury verdict merely because the jury could have drawn different inferences or

conclusions or because judges feel that other results are more reasonable."  *Tennant,* 321 U.S. at

-19-

35.  Plaintiff's argumentative manner with Defendant's counsel during cross-examination, his inability to properly convey events solely related to his Title VII claim in response to the questions that the Court and Defendant posed, and his argumentative nature with the Court support the jury's finding that Plaintiff was, at least in part, an incredible witness.  In contrast, Defendant's witnesses' testimony was brief, to the point, and well articulated.  Additionally, Defendant's witnesses were not argumentative with either Plaintiff or the Court.  Again, these witnesses' demeanor easily supports a jury finding that Defendant's witnesses were more credible than Plaintiff.

In sum, Plaintiff has failed to present sufficient facts or law to support his motion for a new trial.  Accordingly, the Court denies Plaintiff's Rule 59 motion for a new trial.


### IV.  CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the MSPB's decisions to affirm the VA's withholding of Plaintiff's wage-grade increase, its decision to find that Plaintiff failed to establish retaliation for his whistleblowing claims, and its decision to affirm Defendant's 1999 termination of Plaintiff are **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, for a new trial is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendant in these consolidated actions and close these cases.

**IT IS SO ORDERED.**

Dated: July 25, 2005
        Syracuse, New York

Frederick J. Scullin, Jr.
Chief United States District Court Judge